IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CASE NO. 5:18-CR-71 (MTT) |
| ) | |
| IDRIS SHAMSID-DEEN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

Defendant Idris Shamsid-Deen was indicted on December 11, 2018 for possession of a firearm in or affecting interstate commerce by a person who has been convicted of a "misdemeanor crime of domestic violence," in violation of 18 U.S.C. § 922(g)(9). Doc. 1. 18 U.S.C. § 921(33) defines a "misdemeanor crime of domestic violence" ("MCDV") and provides, in relevant part, that

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless-- in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either the case was tried by a jury, or the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

18 U.S.C. § 921(33)(B)(II). The indictment alleges that Shamsid-Deen was convicted of Battery Under the Family Violence Act in Bibb County, Georgia on April 3, 2014. Doc. 41. The Defendant argues that the conviction does not qualify as a MCDV because he did not "knowingly and intelligently waive[] the right to have the case tried by a jury, by guilty plea or otherwise." The parties agree that this is an affirmative defense. Although Shamsid-Deen signed a form stating he agreed to a bench trial, he argues the form was misleading and he did not knowingly and intelligently waive his right to a jury trial. He

therefore moves to exclude his MCDV conviction from evidence because the jury trial waiver was defective. For the following reasons, that motion (Doc. 70) is **GRANTED**.

## I. BACKGROUND

Shamsid-Deen previously filed two motions to dismiss the indictment on the grounds that the MCDV jury waiver was defective. Docs. 23; 70. Although evidence suggested his purported jury trial waiver was suspect, those motions were denied because the indictment, on its face, was sufficient to state an offense, and resolving Shamsid-Deen's MCDV challenge would have required going beyond the face of the indictment.[1] Doc. 69.

On the other hand, it was clear that the issue was one for the Court, not the jury. Although there is no controlling authority on the appropriate procedure for addressing a jury waiver challenge in a § 922(g)(9) prosecution, other courts to consider the issue have most often done so by ruling on a motion to exclude evidence of the conviction under Federal Rule of Evidence 104(a). Doc. 69 at 6-10.[2] Shamsid-Deen then moved to exclude the conviction pursuant to Rule 104(a).

## II. DISCUSSION

### A. Standard

Rule 104(a) allows the Court to decide "any preliminary question about whether . . . evidence is admissible." The Court decides Rule 104(a) questions by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993).

---

[1] The Court convened an evidentiary hearing on August 26, 2019. *See* Docs. 45; 48.

[2] A minority of courts have addressed the issue as a motion to dismiss the indictment. But that alternative is foreclosed by Eleventh Circuit precedent. *See generally* Doc. 69; *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004).

How to allocate that burden is a complex and unsettled issue. But several points are clear.

First, as the parties agreed, § 921(33)(B)(II) creates an affirmative defense. In the Eleventh Circuit, courts consider three factors when determining whether to treat an exception to a criminal statute as an affirmative defense: language and structure, legislative history, and whether the defendant or the Government is better suited to produce evidence concerning the applicability of the exception. *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997).

The statute's jury waiver exception at § 921(33)(B)(II) creates "a narrow proviso to a more general statutory offense," is listed in a separate provision of the statute, and could be omitted without doing violence to the statute. *McArthur*, 108 F.3d at 1353. The statute's language and structure, therefore, indicate that the exception is an affirmative defense. The legislative history of the statute, which one court described as "sparse," provides no indication of whether it is an affirmative defense. *United States v. Hartsock,* 347 F.3d 1, 5 n.4 (1st Cir. 2003). Finally, "[w]here defendants are better equipped to prove facts that would allow them to take advantage of a statutory exception, [courts] ordinarily view that exception as an affirmative defense." *McArthur*, 108 F.3d at 1355. Clearly, the defendant himself will generally be the person best able to provide evidence about whether a jury waiver was knowing and intelligent. After reviewing the *McArthur* factors, therefore, the Court concludes that the exception set out by 18 U.S.C. § 921(33)(B)(II) is an affirmative defense. Other courts to construe the exceptions listed in 18 U.S.C. § 921(33)(B) have likewise held that they create affirmative defenses. *See Hartsock*, 347 F.3d at 6 (citing cases); *United States v. Bethurum*, 343 F.3d 712, 717 (5th Cir. 2003).

Second, the affirmative defense established by § 921(33)(B)(II) does not negate an element of the § 922(g)(9) offense. § 921(33) is divided into two parts: subsection (A) defines MCDV ("the term 'misdemeanor crime of domestic violence' means . . ."), and subsection (B) separately provides an exception ("A person shall not be considered to have been convicted of such an offense . . . unless . . ."). By the statute's terms, a charged MCDV could both satisfy the definition in subsection (A)—and thus qualify as an MCDV under § 922(g)(9)—but nonetheless be subject to the exception in subsection (B). That subsection (B) is wholly separate from the definition of an MCDV in subsection (A) supports the conclusion that it does not negate an element of the crime. Again, other courts considering the issue have reached the same conclusion. *Hartsock*, 347 F.3d 1 at 6 (construing § 921(33)(B)(I)); *Bethurum*, 343 F.3d at 717. And that conclusion is bolstered by the fact that courts have traditionally resolved such defenses as a question of law, rather than allowing them to go to the jury.

Third, the defendant bears the burden of production. When an affirmative defense does not negate an element of the crime, the burden of production generally rests on the defendant. See *McKelvey v. United States*, 260 U.S. 353, 357 (1922) ("it is incumbent on one who relies on such an exception to set it up and establish it"). Courts construing § 921 exceptions to § 922(g) offenses, including in the Eleventh Circuit, have reached the same conclusion. *See United States v. Jackson*, 57 F.3d 1012, 1017 (11th Cir. 1995) (concluding defendants bear burden of production for expungement defense to § 922(g)(1) prosecution); *United States v. Bartelho*, 71 F.3d 436, 440 (1st Cir. 1995) (for restoration of civil rights defense to § 922(g)(1) prosecution, holding the burden of production rests with the Government and noting that "[i]t is certainly much easier for criminal defendants to raise the issue of whether their prior convictions have been nullified or their civil rights otherwise restored"); *United States v. Mayo*, 705 F.2d 62, 76

(2d Cir. 1983) (concluding that the burden of production for the antique firearms exception to § 922(g) offenses rested with the defendant); *United States v. Laroche*, 723 F.2d 1541, 1543 (11th Cir. 1984) (same). The Court has no difficulty concluding the defendant bears that burden here.

However, the ultimate burden of persuasion is a more difficult issue, and the principles above, though they hopefully clarify the issue, do not necessarily resolve it. Even when the defendant bears the burden of production, "[t]he ultimate burden of persuasion . . . may fall on either the government or the defendant, as determined by statute or court decision." *United States v. Alvarez*, 755 F.2d 830, 842 n.12 (11th Cir. 1985). If the burden of persuasion rests with the Government, then, assuming Shamsid-Deen has produced enough evidence to raise the issue of the validity of his jury waiver, the Government must show by a preponderance of the evidence that evidence of the conviction should be admitted. If the burden of persuasion remains with the defendant, then Shamsid-Deen must show by a preponderance of the evidence that evidence of the conviction should be excluded.

There is no controlling law on the issue. The most analogous Eleventh Circuit decision—*United States v. Laroche*, 723 F.2d 1541, 1543 (11th Cir. 1984)—found that the defendant failed to meet his burden of production on his contention that the firearms he possessed were antique weapons not subject to §§ 922(a)(6), (h)(1). But because the defendant failed to meet his burden of production, the Court had no occasion to consider which party bore the burden of persuasion. The Court noted that "[w]here affirmative defenses are created through statutory exceptions, the ultimate burden of persuasion remains with the prosecution, but the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue." *Laroche*, 723 F.2d at 1543. But two of the cases cited by *Laroche* actually stated that the prosecution bore

a burden of proof beyond a reasonable doubt, implying that they viewed the exceptions there as ones which negated an element of the offense.[3] Further, the third case cited by *Laroche*, *United States v. Stout*, noted that "once the government has proven the elements of the offense, the burden shifts to defendants to demonstrate qualification under an exception. *McKelvey*, 260 U.S. [at] 357 . . . The government . . . undeniably bore its burden as to the essential elements of 26 U.S.C. s 5861(i). It was *then* up to defendants to show that they had met the requirements of the proviso in 27 C.F.R. 179.102." 667 F.2d 1347, 1353 (11th Cir. 1982) (emphasis added). That indicates the burden of persuasion on the affirmative defense lies with the defendant.

The Court concludes that although *Laroche* may suggest the Government bears the burden of persuasion on the antique firearms exception, it does not suggest the Government always bears the burden on every § 922(g) affirmative defense. Rather, when the affirmative defense does not negate an element, "[t]he ultimate burden of persuasion . . . may fall on either the government or the defendant, as determined by statute or court decision." *Alvarez*, 755 F.2d at 842 n.12.

The only court to expressly address which party bears the burden of persuasion on the § 921(33)(B) affirmative defenses concluded that the burden of persuasion remains with the defendant. *Hartsock*, 347 F.3d at 9-10. The primary reason for that conclusion was a practical one: rarely will the Government have access to evidence

---

[3] *See United States v. Mayo*, 705 F.2d 62, 74 (2d Cir. 1983) ("The government does not argue that the appellants bore the burden of proof or persuasion on the antique firearm exception. Instead, the government contends that the antique firearms exception in 18 U.S.C. § 921(a)(3) is a form of affirmative defense on which the appellants were obligated to *produce* some evidence to put the exception at issue before the government was obligated to prove its inapplicability beyond a reasonable doubt"); *United States v. Oba*, 448 F.2d 892, 894 (9th Cir. 1971) ("As an adjunct to this discussion, we point out that the exception created by Congress, i. e., 'The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon' in substance constitutes an affirmative defense, which, if asserted, must be negated beyond a reasonable doubt by the prosecution."). The issue in *Mayo*, as in *Laroche*, was whether the defendant bore a burden of production on the affirmative defense. The issue in *Oba* was a challenge, reserved for appeal in a guilty plea, to the sufficiency of the indictment. None of those courts, therefore, actually had before them the issue here.

about the defendant's MCDV waiver of counsel or a jury trial. This case serves as a good example. At the evidentiary hearing, a good deal of testimony concerned the precise sequence of events in Shamsid-Deen's MCDV prosecution: when he obtained counsel, when he received a form, whether he would or would not have been present at an *en masse* recitation of rights, and when he requested a bench trial. The Government elicited testimony about the usual procedures in the Superior Court of Bibb County at the time. But whether a jury waiver was knowing and voluntary will often be a fact-specific inquiry that will turn on the particular circumstances of a case. Here, the only people with personal knowledge of those facts are Shamsid-Deen and his MCDV counsel.

The Court agrees with that reasoning. In many MCDV prosecutions, state courts and state prosecutors will not retain records, and the Government will have limited access to evidence. If a defendant could produce limited evidence to raise the issue but make unavailable critical testimony by state MCDV counsel and the defendant himself, it could dramatically limit the Government's ability to enforce § 922(g) violations. It would also risk placing a burden on state courts because, in the frequent absence of state court records of misdemeanor prosecutions, subpoenas to state prosecutors and judges would often be the Government's only means of gathering enough evidence to carry its burden.

Given the structure of the exceptions at § 921(33)(B) and the fact that almost all relevant evidence will usually be in the defendant's exclusive possession and control, that burden should be allocated to the defendant. Accordingly, the Court agrees with the reasoning set forth by the decision in *Hartsock* and concludes that Shamsid-Deen bears both the burden of production and the burden of persuasion.

**B. Analysis**

On December 9, 2013, Shamsid-Deen was charged with Battery under the Family Violence Act, in the State Court of Bibb County, for conduct allegedly occurring on October 10, 2013. Doc. 45-1 at 1. On January 9, 2014, Melvin Raines, II filed an entry of appearance as counsel for Shamsid-Deen. Doc. 45-2 at 1. On April 3, 2014, Shamsid-Deen entered a plea of "not guilty." Doc. 45-1 at 1. That same day, he executed a form entitled "Record of the Court," which is the form by which the Government contends that Shamsid-Deen knowingly and intelligently waived his right to a jury trial. Doc. 45-3 at 1. A copy is attached as Exhibit A.

The parties focus on three categories of evidence: the Record of the Court form's structure and contents, the transcript of the bench trial, and the usual practices of the State Court of Bibb County at the time.

Both parties rely principally on the form to make their arguments. The Government correctly notes that by signing the form, Shamsid-Deen made the following representations: (i) he "underst[ood] the Court ha[d] entered a Standing Order – Criminal Case which is available to me from the Clerk's Office, the Solicitor's Office, and the Court's website . . .";[4] (ii) he was "fully aware that upon a not guilty plea, I have the right to a trial, either before a jury or the Court, at which trial I would enjoy the presumption of innocence and the State would be required to prove my guilt beyond a reasonable doubt"; and (iii) "I knowingly and voluntarily waive (give up) my right to a trial before a jury of six persons chosen from citizens of Bibb County called for jury duty who would hear the evidence and law and decide if I am guilty or not guilty. I want my case

---

[4] There is no evidence in the record concerning the contents of the Standing Order.

to be heard and decided by the Judge acting without a jury." *Id*. The form was also signed by Mr. Raines.[5]

However, the form did not unequivocally apprise defendants of their jury trial rights. As to the first statement, the contents of the Standing Order referenced in the form are not in the record, so no conclusions can be drawn from that statement. The second statement is ambiguous: a right to a trial "either before a jury or the Court" is not the same thing as a right to a jury trial.[6]

But the biggest problem is the structure of the form. Standing alone, and in the end it stands as the only evidence possibly suggesting a jury trial waiver, the form effectively gave Shamsid-Deen no choice but to waive a jury trial. That is because the form offers two options: (1) plead guilty, or (2) plead not guilty and waive the right to a jury trial. The State Court of Bibb County has now updated the form to provide a third option: "NOT GUILTY . . . and request a JURY TRIAL." Doc. 45-6 at 2. But there was no third option on the form signed by Shamsid-Deen, and he could have reasonably concluded that the two alternatives listed on the form were the *only* options available to him.

---

[5] The presiding judge also signed the form, finding that "the plea of the Defendant is freely and voluntarily entered and any waiver of rights is done with a full understanding of those rights[.]" *Id*. However, the Government does not argue that this is evidence of a valid jury waiver or argue the judge's finding gives rise to any presumption that the jury trial waiver was valid. Because the Government did not make those arguments and Shamsid-Deen had no chance to address them, the Court does not consider them here. But even if the Government had made those arguments, that very general statement, in the face of specific evidence here, i.e., the Record of the Court form, would not lead the Court to conclude that Shamsid-Deen knowingly and intelligently waived his right to a jury trial.

Similarly, the Government makes no argument that a presumption of regularity applies to the MCDV jury waiver. *See Parke v. Raley*, 506 U.S. 20, 29 (1992). Even if it had made that argument and if the argument had merit, the presumption would be overcome here because the form was objectively misleading.

[6] A defendant could have reasonably understood the form to mean that he had a right to one of the two alternatives: for instance, a right to a bench trial. There is no indication on the form that the defendant had his choice of bench trial or jury trial.

Shamsid-Deen selected the second option, which states: ". . . I knowingly and voluntarily waive (give up) my right to a trial before a jury of six persons chosen from citizens of Bibb County called for jury duty who would hear the evidence and law and decide if I am guilty or not guilty. I want my case to be heard and decided by the Judge acting without a jury." Doc. 45-3 at 1. The Government argues that is an unequivocal waiver. But that ignores the fact that, according to the form, if Shamsid-Deen wanted a trial, it had to be a bench trial and he had to initial that box. Clearly, Shamsid-Deen wanted a trial, and his selection of the only option that gave him a trial is hardly evidence of a knowing and intelligent waiver of trial by jury. Thus, if anything, the form actually suggests the *absence* of a right to a jury trial.

Further, the trial record provides no evidence of an effective jury trial waiver. At the April 3, 2014 bench trial, Shamsid-Deen executed the form, and he was found guilty and sentenced to twelve months of probation. Docs. 45-3 at 1; 45-1 at 1-2. The trial transcript contains only two possible references to jury waiver. First, the prosecuting attorney states that it is her "understanding that Mr. Shamsid-Deen wishes to plead not guilty to the accusation of battery and family violence, and proceed with his attorney, Melvin Raines, and have a non-jury trial before you this afternoon." Doc. 45-5 at 4:20-23. The judge asked Shamsid-Deen if "that is what you want to do," and Shamsid-Deen replied, "Yes, sir." *Id.* at 4:24-5:1. That exchange simply confirms the executed form—of the two options available, Shamsid-Deen opted for a bench trial.

Second, during sentencing, Mr. Raines requested a favorable sentence in part on the basis of Shamsid-Deen's jury trial waiver:

> I would ask the Court to take into consideration that we proceeded on a non-jury basis to avoid the trial tax . . . So, Judge, I would just—and he—like I say, a lot of the times I—I tell defendants, you know, I like bench trials because you—you don't waste jurors' time and it helps you sort of avoid the trial tax sometimes. And this is one of those instances, Your Honor, where

> I would ask that, whatever the sentence be, that it be allowed to be served on probation.

Doc. 45-5 at 39:16-18, 40:5-11.[7] Although that indicates that counsel may have made a strategic decision to waive a jury trial, it provides no indication that Shamsid-Deen understood the rights that counsel had relinquished.

Nor do the general practices of the state court indicate that Shamsid-Deen was apprised of his right to a jury trial. At the Court's evidentiary hearing, the Government called, as its only witness the Bibb County Solicitor General at the time of the MCDV prosecution, to testify to the general procedures of the State Court of Bibb County. Doc. 48 at 18:16-19:14, 6:14-20. The Solicitor General testified that prosecutions would proceed as follows: within six weeks of bonding out of jail, an accused would be brought in for an initial appearance. *Id*. at 20:1-13. At the initial appearance, defendants would be read a recitation of rights *en masse*. *Id*. Then the defendants would be given the Record of the Court form.[8] *Id*. However, represented defendants would be placed on the jury calendar by default and would not be present at the *en masse* initial appearance. *Id*. at 19:19-22, 20:10-13, 21:14-23, 25:23-26:8.

The Solicitor General also testified that the judge would "go *ad nauseam* about your rights to a trial, rights to a jury trial versus a non-jury trial," and as best the Court can tell, that testimony refers to the initial appearance. *Id*. at 25:12-14. Critically, if a defendant retained counsel before the initial appearance, then the Solicitor's Office

---

[7] Counsel for Shamsid-Deen and the Government explained the "trial tax" is a colloquial term for the perception that state-court defendants electing a jury trial face harsher sentences. Doc. 58 at 14:21-24, 68:11-23.

[8] The Solicitor General also testified that usually, the Record of the Court form would have been distributed at the initial appearance but was filled out at the time of the bench trial. Docs. 48 at 19:24-21:8. The Court recognizes that the state court's practice may have been to use the form to memorialize a defendant's earlier and separate choice to proceed with a bench trial. However, as already discussed, there is no evidence that happened here. And even if the evidence did allow the Court to conclude that the form only memorialized a prior waiver, there is still no evidence of that prior waiver, and certainly none suggesting that Shamsid-Deen understood his right to a jury trial.

-11-

would rely on defense counsel to explain the defendant's rights. *Id.* at 27:10-24, 44:7-13. At some point between being charged and being convicted, Shamsid-Deen notified the Solicitor General that he had hired a lawyer or wished to hire a lawyer. *Id.* at 30:18-31:25. Although there is evidence he was scheduled to attend an initial appearance on January 10, 2014, his lawyer filed an entry of appearance the day before, on January 9, 2014. Docs. 45-7 at 1; 30:18-31:10; 45-2. Because an attorney's entry of appearance would normally waive the defendant's *en masse* initial appearance, the Court cannot conclude that Shamsid-Deen was present at the January 10 appearance or heard the *en masse* recitation of rights. Again, the only evidence of what Shamsid-Deen actually knew and understood about his right to a jury trial was the form, which suggested that a jury trial was not an option.

A final point requires discussion. Neither Shamsid-Deen nor Raines testified at the evidentiary hearing. To be sure the parties understood the potential significance of that,[9] the Court gave them time to consider whether they wanted to present Shamsid-Deen's or Raines's testimony. Shamsid-Deen announced he did not wish to present further evidence. The Government's response was not as clear, but it too announced it would present no further evidence. Although the Government in its briefing notes that Shamsid-Deen did not testify and that he did not call Raines to testify, the Government does not ask the Court to draw a negative or adverse inference from this. Most likely, Shamsid-Deen was comfortable relying on the misleading Record of the Court and saw no reason to jeopardize his position by subjecting himself to cross examination. On the unusual facts here, that is an understandable tactical decision. Whatever significance can be attached to the absence of testimony from Shamsid-Deen and Raines, it does

---

[9] The Court suggested counsel read *Hartsock,* which, as the Court has done here, stressed that a defendant generally would be in the best position to speak to the efficacy of a jury trial waiver.

not undermine the Court's conclusion that the evidence, particularly the Record of the Court, is more than sufficient to warrant the conclusion that Shamsid-Deen did not knowingly and intelligently waive his right to a jury trial.

### III. CONCLUSION

On these unusual facts, Shamsid-Deen has convincingly demonstrated the absence of a knowing and intelligent jury trial waiver. Accordingly, he has carried his burden. His motion to exclude evidence of the charged predicate MCDV conviction (Doc. 70) is **GRANTED**.

**SO ORDERED**, this 13th day of April, 2020.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT